UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARCO ANTONIO BARRAZA
ENRIQUEZ,

                        Petitioner,

        v.

MARKWAYNE MULLIN et al.,

                        Respondents.

CASE NO. 2:25-cv-02352-LK

ORDER ADOPTING REPORT AND
RECOMMENDATION IN PART
AND GRANTING IN PART AND
DENYING IN PART PETITION
FOR WRIT OF HABEAS CORPUS

        This matter comes before the Court on the Report and Recommendation of U.S. Magistrate Judge Grady J. Leupold, Dkt. No. 13, and the Respondents' objections, Dkt. No. 14.[1] For the reasons set forth below, the Court adopts the R&R in part, overrules the objections, and orders Petitioner Marco Antonio Barraza Enriquez's release.[2]

---

[1] Barraza Enriquez, who is represented by counsel, filed a document captioned "Petitioner's Objections," but he states therein that he "has no objections" to the R&R. Dkt. No. 16 at 1–2.

[2] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART AND GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 1

## I.    BACKGROUND

**A.    Judge Leupold's Report and Recommendation**

On February 10, 2026, Judge Leupold issued his R&R, recommending that the Court grant in part Barraza Enriquez's petition for habeas corpus, deny Respondents' request to dismiss that petition, and deny Barraza Enriquez's request to prevent third country removal. Dkt. No. 13 at 7–8.

The Court adopts the factual and procedural background set forth in Judge Leupold's R&R. *See id.* at 2–4. Barraza Enriquez, a citizen of Mexico, is currently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. *Id.* at 1–2. When he entered the United States without inspection in September 2024, the Department of Homeland Security reinstated a prior order of removal against him and released him on an Order of Supervision ("OSUP"). *Id.* at 2; *see also* Dkt. No. 11-4 at 2–5 (the OSUP). He contends—and Respondents[3] do not dispute—that his removal order was final on October 1, 2024. Dkt. No. 21 at 31; *see also* Dkt. No. 11-3 at 2 (decision to reinstate prior order of removal).[4]

On January 28, 2025, U.S. Immigration and Customs Enforcement ("ICE") took Barraza Enriquez into custody at a routine check-in, and he has been detained since that time. Dkt. No. 13

---

[3] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

[4] Barraza Enriquez stated in his original petition that his removal order became final on April 1, 2025. Dkt. No. 1 at 17. Judge Leupold noted that Respondents did not provide a date when the removal order became final. Dkt. No. 13 at 5 n.1. However, Respondents' supplemental briefing—which discusses OSUP revocation after one is granted based on a "determin[ation] that there is no significant likelihood of removal in the reasonably foreseeable future"—makes clear that the OSUP was revoked after the removal order became final. Dkt. No. 19 at 1. In other words, between the two potential finality dates—April 1, 2025 (post-OSUP-revocation) and October 1, 2024 (pre-OSUP-revocation), Respondents' briefing only makes sense if the earlier date is the date upon which the removal order became final.

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART AND GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 2

at 2; *see also* Dkt. No. 7-1 at 52 (Notice of Intent/Decision to Reinstate Prior Order reinstating order of removal); Dkt. No. 11-5 at 2 (certificate of reinstatement of removal).

An immigration judge granted Barraza Enriquez's application for withholding of removal under the Convention Against Torture ("CAT") but denied his application for withholding of removal only. Dkt. No. 13 at 2–3; Dkt. No. 11-8 at 2–3. Both Barraza Enriquez and the government appealed that decision to the Board of Immigration Appeals ("BIA"). Dkt. No. 13 at 3.

Meanwhile, on November 21, 2025, Barraza Enriquez filed this petition for habeas corpus, Dkt. No. 1, followed by an amended petition, Dkt. No. 7-2, and a verified petition, Dkt. No. 21.[5] He contends that the government has violated his Fifth Amended Due Process rights by revoking his OSUP, detaining him indefinitely, and possibly planning to remove him to a third country. *Id.* at 35–37.[6] Among other relief, Barraza Enriquez seeks release from detention, a bond hearing in the alternative, and notice and an opportunity to be heard if the government plans to remove him to a third country. *Id.* at 38–39.

Judge Leupold found that Barraza Enriquez's detention has become indefinite. Dkt. No. 13 at 5–6. He noted that Respondents conceded that Barraza Enriquez's detention has continued beyond the presumptively reasonable six-month period. *Id.* at 5. Judge Leupold also found that Respondents did not provide evidence to support their argument that "[i]f Petitioner's withholding of removal is denied, ICE anticipates that there will be no obstacles to effectuating his removal to Mexico once it is permitted to do so." *Id.* at 6. Nor did Respondents respond to Barraza Enriquez's

---

[5] Because Barraza Enriquez's petition was not verified as required by 28 U.S.C. § 2242 and Local Civil Rule 100(e), the Court ordered him to file a verified petition, Dkt. No. 20, and Barraza Enriquez has done so, Dkt. No. 21.

[6] In addition to asserting a Fifth Amendment claim, Barraza Enriquez lists the Administrative Procedure Act ("APA") in the title of his first claim for relief. *Id.* at 35. However, what follows addresses only the Fifth Amendment claim, *id.* at 36, so the Court does not address the APA claim further or invent arguments for Barraza Enriquez. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART AND GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 3

argument about the "current procedural posture of the removal proceedings," which is that if the BIA denies his appeal, Barraza Enriquez would appeal the decision to the Ninth Circuit Court of Appeals, that decision could take 12-24 months, and he would remain detained in the interim. *Id.* at 5–6 (citing Dkt. No. 7-1 at 105). Judge Leupold found that Barraza Enriquez is entitled to habeas relief on his indefinite detention claim, and he recommended that the Court grant the petition on that basis and order Barraza Enriquez's immediate release. *Id.* at 6.

**B.      Respondents' Objections**

Respondents filed timely objections to the R&R. Dkt. No. 14. They argue that the Court should not adopt the R&R and should instead deny the habeas petition, or in the alternative, the Court should order a bond hearing rather than release. *Id.* at 1. Barraza Enriquez did not respond to the objections.

On March 16, 2026, the Court requested that Respondents file a supplemental brief addressing Barraza Enriquez's claim that Respondents denied him due process by revoking his OSUP without following the regulations in 8 C.F.R. § 241.4(l). Dkt. No. 17 at 1, 3; *see also* Dkt. No. 21 at 2, 5, 12. The next day, Barraza Enriquez filed a Notice of Supplemental Facts. Dkt. No. 18. That notice stated that on March 17, 2026, the BIA issued a decision on the pending appeals, affirmed the Immigration Judge's grant of Withholding of Removal under the CAT, and denied Barraza Enriquez's appeal requesting Withholding of Removal. Dkt. No. 18 at 2; Dkt. No. 18-1. Respondents subsequently filed their supplemental brief. Dkt. No. 19.

## II.    DISCUSSION

**A.      Legal Standard**

The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the recommendations made by the magistrate judge." 28 U.S.C.

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART AND GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 4

§ 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to"). As the statute and rule suggest, the Court reviews findings and recommendations "*if objection is made*, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *see also id.* ("Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct.").

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART AND GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 5

'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate (1) that she has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

**B.      Statutory and Regulatory Requirements Regarding Revocation of Release**

Because Barraza Enriquez's habeas petition is largely based on the deprivation of process he alleges he is due, the Court begins by describing the process required by applicable statutes and regulations.

Barraza Enriquez is currently detained pursuant to 8 U.S.C. § 1231(a) because he is subject to a final order of removal. *See* 8 U.S.C. § 1231(a)(5); *see also Padilla-Ramirez v. Bible*, 882 F.3d 826, 831–33 (9th Cir. 2018) (holding that reinstated removal orders are administratively final for purposes of detention). When a final order of removal has been entered, a noncitizen enters a 90-

day "removal period." 8 U.S.C. § 1231(a)(1). Under 8 U.S.C. § 1231(a)(2)(A), a noncitizen "shall" be detained during the removal period. The Ninth Circuit has held "the period of detention under § 1231(a)(2) . . . passes constitutional scrutiny." *Khotesouvan v. Morones*, 386 F.3d 1298, 1301 (9th Cir. 2004). After that 90-day removal period concludes—in what is referred to as the "post-removal period"— the government's detention authority shifts to Section 1231(a)(6). *See* 8 U.S.C. § 1231(a)(6); *Johnson v. Guzman Chavez*, 594 U.S. 523, 528–29 (2021). "[T]he due process analysis attaches in the post-removal period[.]" *Khotesouvan v. Morones*, 386 F.3d 1298, 1301 (9th Cir. 2004). Here, the parties agree that Barraza Enriquez is in the post-removal period and that he is detained pursuant to Section 1231(a)(6). *See* Dkt. No. 21 at 16; Dkt. No. 10 at 6.

The regulations governing revocation of an OSUP contemplate revocation in only two circumstances: (1) where the noncitizen violates his conditions of release, and (2) where "on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)–(2). Alternatively, "[t]he Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to [USCIS] custody [a noncitizen] previously approved for release under the procedures in this section," and "[a] district director may also revoke release of [a non-citizen] when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(l)(2). Discretionary revocation is permitted when, in the opinion of the revoking official:

> (i) The purposes of release have been served;
>
> (ii) The [noncitizen] violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]; or

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART AND GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 7

(iv) The conduct of the [noncitizen], or any other circumstance, indicates that release would no longer be appropriate.

*Id.*

Upon revocation, the noncitizen "will be notified of the reasons for revocation of his . . . release," 8 C.F.R. § 241.13(i)(3), and USCIS "will conduct an initial informal interview promptly after his . . . return to [USCIS] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification," including by "submit[ting] any evidence or information that he . . . believes shows there is no significant likelihood he . . . [will] be removed in the reasonably foreseeable future, or that he . . . has not violated the order of supervision." *Id.*

## C.     Mr. Barraza Enriquez is Entitled to Release

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Courts analyze three factors to determine whether an administrative procedure provides due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context," 53 F.4th 1189, 1206–07 (9th Cir. 2022), and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi*

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART AND GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 8

*v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025). Respondents acknowledge that "Courts analyze revocation of OSUP under the framework set forth in *Mathews*[.]" Dkt. No. 19 at 2.

As set forth above, the applicable regulations provide that "[u]pon revocation" of a release order, a non-citizen "will be notified of the reasons for revocation of his or her release" and will be afforded an initial informal interview "promptly after his or her return to . . . custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3). Only the "Executive Associate Commissioner" or a "district director" may revoke the release of a noncitizen pursuant to section 241.4(l)(2), after considering certain factors. 8 C.F.R. § 241.4(l)(2). "The procedures set forth in both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 are intended to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required." *Hall v. Nessinger*, No. 25-CV-667-JJM-PAS, 2026 WL 18583, at *4 (D.R.I. Jan. 2, 2026); *see also Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025) (8 C.F.R. § 241.4 "plainly provide[s] due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release by, among other things, requiring that only certain designated officials make custody determinations; mandating that a noncitizen receive a copy of any decision to release or detain that individual; establishing criteria and factors applicable to detention, release, and revocation determinations; and requiring certain procedural safeguards upon revocation to allow a noncitizen to have an opportunity to be heard to contest the reasons for revocation, including informal interviews and custody reviews"). "Therefore, ICE violates a noncitizen's due process rights when the agency re-detains [hi]m and fails to comply with these revocation procedures." *Hall*, 2026 WL 18583, at *4.

With respect to the first *Mathews* factor, the Court finds that Barraza Enriquez has a liberty interest in being free from detention in light of his previous release on OSUP. Dkt. No. 21 at 20;

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART AND GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 9

*see, e.g.*, *Francisco Lorenzo v. Bondi*, No. 2:25-cv-02660-LK, 2026 WL 237501, at *5 (W.D. Wash. Jan. 29, 2026); *Singh v. Bondi*, No. C26-0477-KKE, 2026 WL 586230, at *2 (W.D. Wash. Mar. 2, 2026).

As to the second *Mathews* factor, Barraza Enriquez argues that pursuant to 8 C.F.R. § 241.4(l), only "certain authorized officials" may revoke an individual's OSUP, and they may do so only if they make individual findings and promptly notify the noncitizen of the reason for revocation. Dkt. No. 21 at 8. Barraza Enriquez argues that none of that occurred here. *See id.* at 9–13. He contends that instead, the revoking officer was a deportation officer, Dkt. No. 7-1 at 52, and not any of the officials listed in the applicable regulation, 8 C.F.R. § 1.2, Dkt. No. 21 at 12. The certificate of reinstatement served on him was signed by a Supervisory Detention & Deportation Officer. Dkt. No. 11-5 at 2. Respondents concede that they "cannot, at this time, confirm whether the referenced notice and interview were provided in this instance." Dkt. No. 19 at 3. However, they "do not concede that any deficiency occurred and put Petitioner to his proof." *Id.* They argue that Barraza Enriquez has not met his burden of showing that he was denied the required process because he has not filed a declaration or signed his habeas petition, and "the petition relies only on a declaration from Petitioner's wife (Dkt. 1-3; Dkt. 7-1, pgs. 95-99), which does not establish that Petitioner himself was denied notice or an informal interview." *Id.* However, Barraza Enriquez subsequently filed a verified petition. Dkt. No. 21. Accordingly, the Court considers the assertions in the petition.

The Court also finds that the risk of erroneous deprivation is significant where, as here, the government failed to follow its own procedures for revocation of release, thus depriving the noncitizen of process due prior to revocation. *See Asfestani v. Current or Acting Field Off.*, No. 1:25-CV-1562-SCR, 2025 WL 3677321, at *6 (E.D. Cal. Dec. 18, 2025) ("[N]umerous courts have granted habeas relief for ICE's failure to comply with post-order detention regulations."

(collecting cases)); *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at \*6 (S.D. Cal. Oct. 22, 2025) (Courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." (collecting cases)); *Santamaria Orellana*, 2025 WL 2444087, at \*6 (regulations governing revocation of release "are intended to provide due process in that they are fairly construed to be part of a procedural framework 'designed to ensure the fair processing of an action affecting an individual,' such that when they are not followed, prejudice is presumed"). This *Mathews* factor weighs in Barraza Enriquez's favor.

The third *Mathews* factor also weighs in Barraza Enriquez's favor because Respondents do not contest that providing the process required to revoke OSUP is "routine and low cost." *Francisco Lorenzo*, 2026 WL 237501, at \*5.

Based on the foregoing review of the *Mathews* factors, the Court finds that Respondents failed to provide Barraza Enriquez with the procedures due to him under the Due Process Clause, and accordingly, his detention is unlawful.[7]

**D.    The Court Adopts the Report and Recommendation Regarding Third Country Removal**

In the R&R, Judge Leupold recommended that the Court deny Barraza Enriquez's request for an order that Respondents "provide notice and an opportunity to be heard, a reasonable fear hearing and an individual hearing prior to any third country removal." Dkt. No. 13 at 7 (citing Dkt. 7-2 at 39). As Judge Leupold noted, *id.*, Respondents offered no evidence that they intend to remove Barraza Enriquez to any country other than Mexico, Dkt. No. 10 at 7–8, and Barraza Enriquez stated in his reply that he "accepts the statement of the Government that Petitioner is not

---

[7] Because the Court finds that Respondents violated Barraza Enriquez's procedural due process rights, it need not consider his claim that Respondents' actions were arbitrary and capricious under the APA, even if he had properly pleaded that claim.

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART AND GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 11

being screened for third country removal and abandons that issue at this time," Dkt. No. 12 at 2. Barraza Enriquez did not object to the R&R on this issue. *See* Dkt. No. 16. Moreover, in his Petition, Barraza Enriquez stated that "there is no known third country removal identified or likely of Plaintiff in the reasonably foreseeable future," and "[t]here has been no notice to Plaintiff of concrete plans of a potential third country removal as of the time that Plaintiff filed this habeas petition." Dkt. No. 21 at 18, 27.

Federal courts lack jurisdiction to hear claims that fail to "present an actual case or controversy." *Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (citation modified). To that end, federal courts may not "issue advisory opinions" or "declare rights in hypothetical cases[.]" *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). At this juncture, Barraza Enriquez's claims about third country removal are too speculative to form a live controversy. Although the BIA subsequently resolved the appeals, affirmed the Immigration Judge's grant of Withholding of Removal under the CAT, and denied Barraza Enriquez's appeal requesting Withholding of Removal, Dkt. No. 18 at 2; Dkt. No. 18-1, it still does not appear that this issue is ripe for the Court's review. Accordingly, the Court adopts the R&R on this issue.

### III.  CONCLUSION

For the reasons stated above, the petition for writ of habeas corpus, Dkt. No. 21, is GRANTED IN PART and DENIED IN PART, and the Court ORDERS as follows:

1. Respondents shall immediately release Barraza Enriquez from custody subject to the terms of his most recent OSUP or on conditions otherwise compliant with 8 U.S.C. § 1231(a)(3). *See* 8 U.S.C. § 1231(a)(6) ("[I]f released, [a noncitizen ordered removed] shall be subject to the terms of supervision in paragraph (3))";

2.      The parties shall file a Joint Status Report by April 9, 2026, confirming that Barraza Enriquez has been released;

3.      Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 432. (3d Cir. 2026) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 8th day of April, 2026.

Lauren King
United States District Judge

ORDER ADOPTING REPORT AND RECOMMENDATION IN PART AND GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 13